C. R. BLACKMAN, Appellant, v. L. KESSLER *et al.*

**Evidence:** PLEA AND PROOF. Where, in a suit for rent, the tenant does not demand relief because of false representations by the landlord's agent, evidence that he relied on the agent's representations, which were false, in becoming a party to the lease, is inadmissible.

**Action for Rent:** *Substituted lease.* Where, in a suit for rent, the tenant's answer, averring that the written lease was set aside by a verbal agreement, and that he was only responsible for the reasonable value of the land, is not assailed, evidence as to the reasonable rental value of the land is admissible.

**Instructions:** EVIDENCE. Where the tenant, in a suit for rent, avers a waiver of the original lease, and facts from which the law might infer an implied contract, it is error for the court to require the jury to determine whether his averments are true, where there is no evidence to sustain some of them.

PLEA AND PROOF. An instruction neither justified by the pleadings nor supported by the evidence is erroneous.

*Appeal from Monona District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

SATURDAY, DECEMBER 16, 1899

ACTION at law to recover an amount alleged to be due as rent. There was a trial by jury, a verdict for the defendants, and a judgment in their favor for costs. The plaintiff appeals.—REVERSED.

*Chas. E. Underhill* for appellant.

*Brown & Anderson* and *B. F. Ross* for appellees.

ROBINSON, C. J.—In March, 1896, the plaintiff leased to the defendants, L. Kessler and John Eads, two hundred

and forty acres of land in Monona county for the term end-
ing March 1, 1897. The lease provided that the lessees
should pay as rent two hundred and fifty dollars on the first
day of December, 1896, and a like amount on the first day
of January, 1897, but also contained the following: "In
case loss to the amount of one-quarter of the crop is sus-
tained by flood, first party (Blackman) agrees to take one-
third of crop, delivered in Onawa, and two dollars per
acre for the grass land." The plaintiff claims that during the
term of the lease the parties thereto agreed that the defend-
ants should pay as rent one-third of the crop, and two
dollars per acre for the grass land, and that all rent should
be due by January 1, 1897; that the defendants have deliv-
ered to the plaintiff one-third of the corn raised on the
premises, and seventy-nine dollars to apply as rent for the
grass land; that there were ninety acres of the grass land;
and that there is due as rent therefor one hundred and one
dollars. Judgment for that sum and for attorney's fees
and costs is demanded. The defendants admit that an
agreement was made with the plaintiff, by virtue of which
he was to receive one-third of the crop as rent for the
premises, and aver that it has been delivered to him. They
further allege, that for the purpose of misleading the defend-
ants, the plaintiff, at the time the lease was made, fraudu-
lently represented to the defendants that the grass land was
first-class grass land, but that in fact it was very inferior;
that about June 1, 1896, the defendants asked the plain-
tiff to be released from the lease, for the reason that "they
were being drowned out, and would be unable to raise any
crop," and would be able to get but little hay from the
grass land, and offered to turn the premises over to the
plaintiff and make no charge for the work already per-
formed; that the plaintiff "told the defendants to go ahead,
and do the best they could with the farm, and he would
do the right thing with them; that, relying on this repre-
sentation that the plaintiff would do what was right with

the defendants, they remained on said premises, and farmed the same as best they could." The defendants further state that there were but seventy-two acres of the grass land, the rental value of which was but fifty cents per acre, and that they have delivered to the plaintiff one-third of the crop, and one hundred and ten dollars and fifty-five cents in addition. There was a conflict in the testimony respecting the statements made in the latter part of May, 1896, in regard to what the plaintiff would do if the defendants continued to farm the leased premises. The business was transacted through an agent of the plaintiff. The plaintiff denies that any agreement was entered into as a substitute for the written lease, and states that the defendants made complaint of hard luck on account of rains, and asked him if he intended to require the payment of the five hundred dollars as rent; that he said that, if the crops did not turn out better than they looked at that time he should not expect the five hundred dollars, but the defendants could take advantage of the other provision of the lease as to the rent. The jury was authorized, however, to find that the plaintiff, through his duly authorized agent, told the defendants, in answer to their complaint as to rains and poor prospects, "to go ahead, and do the best they could," and he "would treat them right," and that the defendants relied upon that statement, and continued to farm the leased premises. In December, 1896, the parties to the lease and the plaintiff accepted the price of one-third of the corn raised on the premises as rent for all but the grass land, and, in addition, seventy-nine dollars to apply on the rent for the grass land. He contends that there had been a difference between the parties in regard to the number of acres of grass land, but that they agreed upon ninety acres as a basis of settlement, and that the defendants should pay as rent therefor two dollars per acre. The defendants deny that there was any settlement for the grass land, and claim that it included but seventy-two acres.

I. The defendants showed, without objection, that the agent of the plaintiff represented at the time they agreed to take the place that the grass land was first-class hay land. The defendants were then permitted to show, notwithstanding objections of the plaintiff, that they relied upon the representations thus made, and that they were false. Whether there was evidence which tended to show that the powers of the agent were such that the plaintiff was responsible for his representations, we need not determine. The defendants did not demand any relief on the ground that false representations were made, and so much of the testimony objected to as tended to show that the defendants relied upon the representations in becoming parties to the lease was not applicable to any material issue in the case, and should have been excluded.

II. Testimony in regard to the quality and rental value of the grass land was admitted, although objected to by the plaintiff. The contention of the defendants was that the written lease had been set aside by a subsequent verbal agreement of the parties, and that they were only responsible for the reasonable value of the grass land. The answer was not assailed by the plaintiff, but was treated as sufficient, and the evidence in question was properly admitted as tending to show the reasonable rental value of the land.

III. The answer, after alleging the fraudulent representations by the agent of the plaintiff, states as follows: "That about June 1, 1897, the defendants asked the plaintiff to be released from the written agreement for the leasing of said premises, for the reason that they were drowned out, and would be unable to raise any crop; that they would be able to get but little hay from the grass land, —and offered to turn the premises over to the plaintiff, and make no claim for the work already performed. That the plaintiff or his agent told the defendants to go ahead, and do the best they could with the farm, and he would do the right thing for them. That, relying upon this representa-

tion that the plaintiff would do what was right with the defendants, they remained on said premises, and farmed the same as best they could." The part of the answer we have set out is all that can be regarded as pleading the making of a new contract in lieu of the original lease, and it may well be questioned whether it avers the making of a new contract. Since no direct attack was made on that part of the answer prior to the motion for a new trial, we do not determine whether it is sufficient, but content ourselves with saying that, at most, it can only be regarded as alleging a waiver of the original lease, and facts from which the law might infer an implied contract to pay a reasonable rent for the leased premises. The court required the jury to determine whether the averments in the part of the answer quoted were true, and to that the plaintiff objects on the ground that there was no evidence which tended to sustain some of the averments. The objection is well founded, as applied to the claim that the defendants asked to be released from the written agreement, in part, on the alleged ground "that they would be able to get but little hay from the grass land." The evidence fails to show that the defendants made any objection to the grass land, or claimed that it would not furnish suitable grass for a reasonable quantity of good hay, before this action was commenced. Their complaint had been of the difficulty of procuring a good crop from the cultivated part of the land, by reason of the rain. Nor do we find any evidence tending to show that the defendants offered to surrender the premises to the plaintiff, and "make no charge for the work already performed." As already stated, the representations of the agent in regard to the quality of the grass land were immaterial. Hence the jury should not have been required to find whether they were made as alleged. The jury was also required to determine whether the plaintiff, in connection with the alleged statement to the defendants to "go ahead, and do the best they could with

the farm, and he would do the right thing by them," also said "that he was only keeping the farm till he could get a chance to sell it, and he wanted the defendants to farm it and keep the premises in good shape, mow the grass land, and keep the appearance of the farm such as would not be a detriment to the sale of the same." We are of the opinion that this, also, was erroneous. There was nothing in the pleadings to justify such an instruction, and nothing in the evidence on which it could have been based. For the errors pointed out, the judgment of the district court is REVERSED.

GRANGER, J., not sitting.